IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
BEAUFORT DIVISION

| | |
|---|---|
| Cheryl A. Munday and Margaret Devine, on behalf of themselves and others similarly situated,<br><br>                    Plaintiffs,<br><br>-vs-<br><br>Beaufort County, Philip Foot, Quandara Grant, John Does 1-5 and Jane Does 1-5,<br><br>                    Defendants. | C/A No.:  9:20-cv-02144-DCN-MHC<br><br><br><br><br>**PLAINTIFFS' LOCAL RULE 26.03 RESPONSES** |

Pursuant to Local Civil Rule 26.03 (D.S.C.), Plaintiffs provide the following information in addition to the parties' Fed. R. Civ. P. 26(f) report:

**(1)  A short statement of the facts of the case.**

This action concerns the manner in which inmates are searched at the Beaufort County Detention Center in Beaufort, South Carolina, and alleges, among other things, violations of the Fourth, Eighth, and Fourteenth Amendments of the United States Constitution and their corollaries under the South Carolina Constitution.

The main issue raised by this action is the equal protection rights of women whom the Beaufort County Detention Center routinely subject to humiliating strip and body cavity searches in violation of the Constitutions and laws of the United States and State of South Carolina.  A specific concern is that the Beaufort County Detention Center requires degrading and unnecessary strip and body cavity searches of female inmates under circumstances and conditions when it does not require the same of male inmates.

1

Plaintiffs Cheryl A. Munday and Margaret Devine seek to represent a class of all women who have been admitted to the Beaufort County Detention Center while waiting for bail to be set or for an initial court appearance, women who have been arrested on default warrants and held in the Beaufort County Detention Center, and women who have been held in protective custody in the Beaufort County Detention Center. Included in this proposed class are women who have been taken into custody by the Beaufort County Sheriff's Office and other local law enforcement agencies in Beaufort County, South Carolina, and then transported to the Beaufort County Detention Center. These women have all been unlawfully subjected to routine strip searches, including degrading visual body cavity searches.

**(2) The names of fact witnesses likely to be called by the party and a brief summary of their expected testimony.**

(a) Cheryl Munday will testify regarding how she was treated upon arrival at the Beaufort County Detention Center, including a full body "pat down" where a BCDC Officer Defendant grabbed Munday's genitals. Munday will describe the humiliating strip search that followed, where officers shouted while Munday was required to repeatedly bend over, manually spread her buttocks, and cough. Male arrestees in plain view of Munday were patted down from the knees only and not strip searched.

(b) Plaintiff Margaret Devine will testify how she was treated upon arrival at the Beaufort County Detention Center, including a full body pat down. Devine will describe the humiliating strip search that followed when she was led to a shower stall and ordered to remove her clothing. Defendants required Devine to bend over, expose her genitalia, and cough "harder and louder". After the strip search, Devine was required to shower while guards watched.

(c)     Female fact witnesses will testify that they were strip searched Beaufort County Detention Center, male witnesses will testify they were not.  Plaintiffs expect to identify these witnesses via discovery and to identify them specifically thereafter.

(d)     Upon information and belief, former employees of Beaufort County Detention Center (to be identified) will testify that all female arrestees were strip searched but male arrestees were not.

**(3)  The names and subject matter of expert witnesses (if no witnesses have been identified, the subject matter and field of expertise should be given as to experts likely to be offered).**

None at this time.  Plaintiffs expect to produce expert(s) regarding standards on treatment of prisoners including, without limitation, general principles governing imprisonment and intake screening.  Plaintiffs will identify experts in accordance with the requirements of the applicable scheduling order.

**(4)  A summary of the claims or defenses with statutory and/or case citations supporting the same.**

Some jails seek to improve security by requiring some kind of strip search of *everyone* who is to be detained. These procedures have been used in different places throughout the country. *See Roberts v. Rhode Island,* 239 F.3d 107, 108-09 (1st Cir. 2001); *Chapman v. Nichols,* 989 F.2d 393, 394 (10th Cir. 1993); *Giles v. Ackerman,* 746 F.2d 614, 615 (9th Cir. 1984) *(per curiam); see also, e.g., Bull v. City and Cty. of San Francisco,* 595 F.3d 964 (9th Cir. 2010) *(en banc)* (San Francisco, Ca.); *Powell v. Barrett,* 541 F.3d 1298 (11th Cir. 2008) (en banc) (Fulton County, Ga.); *Masters v. Crouch,* 872 F.2d 1248, 1251 (6th Cir. 1989) (Jefferson County, Ky.); *Weber v. Dell,* 804 F.2d 796, 797-798 (2d Cir. 1986) (Monroe County, N.Y.); *Stewart v. Lubbock Cty.,* 767

F.2d 153, 154 (5th Cir. 1985) (Lubbock County, Tex.).  Persons arrested for minor offenses may be among the detainees processed at these facilities.  This is, in part, a consequence of the exercise of state authority that was the subject of *Atwater v. Lago Vista,* 532 U.S. 318, 121 S.Ct. 1536, 149 L.Ed.2d 549 (2001).

The United States Supreme Court acknowledges that detecting contraband concealed by new detainees is a serious responsibility.  *Hudson v. Palmer,* 468 U.S. 528, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (recognizing "the constant fight against the proliferation of knives and guns, illicit drugs, and other contraband.").

The Fourth Amendment of the United States Constitution provides that "[t]he right of the people to be secured in their person…against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause."  Those confined in prison are entitled to basic constitutional rights.  *Bell v. Wolfish*, 441 U.S. 520, 545, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979).  "Intentional humiliation of even the most hardened criminals cannot be tolerated by a civilized society."  *Hudson*, 468 U.S. at 528.  "Prison walls do not form a barrier separating prison inmates from the protections of the Constitution."  *Turner v. Safley*, 482 U.S. 78, 84, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).  "The constitutional right at issue here is the Fourth Amendment right to be free of 'unreasonable searches and seizures."  *Florence v. Board of Chosen Freeholders,* 132 S.Ct. 1510, 1526 (2012).  The applicable standard is the Fourth Amendment balancing inquiry announced regarding prison inmates in *Bell*, 441 U.S. at 559: "The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application.  In each case is requires balanced of the need for the particular search against the invasion of personal rights that the search entails.  Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted."

The policy of the Beaufort County Detention Center under which female arrestees were routinely subjected to strip searches – while similarly situated males were not – established a significant disparity in treatment based on gender.  Accordingly, the policy is subject to scrutiny under the equal protection clause of the Fourteenth Amendment, which requires that the party seeking to uphold a policy that expressly discriminates on the basis of gender must carry the burden of showing an "exceedingly persuasive justification" for the differing treatment.  *Mississippi University for Women v. Hogan*, 458 U.S. 718, 102 S.Ct. 3331, 3336, 73 L.Ed. 2d 1090 (1982). This burden is met "only by showing at least that the classification served 'important governmental objectives and that the discriminatory means employed' are 'substantially related to the achievement of those objectives.'" *Id., quoting Wengler v. Druggists Mut. Ins. Co.*, 446 U.S. 142, 150, 100 S.Ct. 1540, 1545, 64 L.Ed.2d 107 (1980).

The equal protection clause of the Fourteenth Amendment prohibits discrimination based on gender. Classifications made on the basis of sex receive intermediate scrutiny, which requires the government to show that the classification is substantially related to an important state interest. *See, e.g., Pickettt v. Brown*, 462 U.S. 1 (1983) (two-year statute of limitations on paternity and support actions on behalf of illegitimate children violates equal protection); *Craig v. Boren*, 429 U.S. 190 (1976) (lower drinking age for women than that for men violated equal protection).  Male and female detainees are similarly situated and Defendants cannot show that the incidence of items found in the vaginal cavities of women are so much greater than that associated with items secreted in the anal cavities of men to justify their grossly disparate search treatment.  There is no comparative data to suggest that women arrested in Beaufort County, South Carolina, conceal items in their vaginas to such a degree as to justify strip searching only women but not men arrested

for similar offenses. Defendants cannot show a substantial relation between the disparity in treatment and an important state purpose.

(5) **Absent special instructions from the assigned judge, the parties shall propose dates for the following deadlines listed in Local Civil Rule 16.02:**

(a) **Exchange of Fed. R. Civ. P. 26(a)(2) expert disclosures; and**

(b) **Completion of discovery.**

See the parties' Rule 26(f) report.

(6) **The parties shall inform the Court whether there are any special circumstances which would affect the time frames applied in preparing the scheduling order.**

None known other than as requested in the Rule 26(f) report. If the COVID-19 pandemic affects court operations, scheduling of depositions, etc., longer than presently anticipated, that could further affect the applicable time frames.

(7) **The parties shall provide any additional information requested in the Pre-Scheduling Order (Local Civil Rule 16.01) or otherwise requested by the assigned judge.**

Not applicable.

BAUER & METRO, P.C.


BY: /S/ ROBERT S. METRO
Robert S. Metro, Esq.
Fed. ID # 12680
Post Office Box 7965
Hilton Head, SC 29938
(843) 842-5297
rmetro@bauerandmetro.com

and

PETERS, MURDAUGH, PARKER,
ELTZROTH & DETRICK, P.A.

BY:    /s/ Bert G. Utsey, III
                Bert G. Utsey, III
                706 Orleans Road, Suite 101
                Charleston, SC 29407
                P.O. Box 30968 (29417)
                (843) 818-4399
                butsey@pmped.com

July 27, 2020                Attorneys for Plaintiffs
Charleston, South Carolina