**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

| | |
|---|---|
| CHERYL A. MUNDAY and MARGARET DEVINE, *on behalf of themselves and others similarly situated*,<br><br>      Plaintiffs,<br><br>vs.<br><br>BEAUFORT COUNTY, PHILIP FOOT, QUANDARA GRANT, JOHN DOES 1–5 and JANE DOES 1–5,<br><br>      Defendants. | No. 9:20-cv-02144-DCN-MHC<br><br>**ORDER** |

  The following matter is before the court on United States Magistrate Judge Molly H. Cherry's report and recommendation ("R&R"), ECF No. 49, that the court grant plaintiffs Cheryl A. Munday ("Munday") and Margaret Devine's ("Devine") motion for class certification, ECF No. 31. For the reasons set forth below, the court adopts the R&R with certain clarifications and grants the motion.

**I. BACKGROUND**

  The R&R ably recites the facts, and the parties do not object to the R&R's recitation thereof. Therefore, the court will only briefly summarize material facts as they appear in the R&R for the purpose of aiding an understanding of the court's legal analysis.

This case involves certain procedures used for female pre-classification detainees at the Beaufort County Detention Center ("BCDC").[1] Defendant Beaufort County (the "County") operates BCDC. Defendant Philip Foot ("Foot") is the Assistant County Administrator for the Public Safety Division who oversees the BCDC. Defendant Quandara Grant ("Grant") is a colonel and the director of the BCDC. BCDC's practice has been to house female pre-classification inmates in general population while placing male pre-classification inmates in a separate pre-classification cell outside of general population. On February 27, 2015, BCDC began conducting strip and visual body cavity searches on any pre-classification detainee placed in general population. ECF Nos. 31-4 and 31-5. Accordingly, because female pre-classification detainees were held in general population, BCDC conducted a strip and visual body cavity search on every female pre-classification detainee awaiting bond. BCDC did not, however, do so for similarly-situated male pre-classification detainees prior to May 5, 2020, as they were housed in a separate pre-classification cell outside of general population. There is generally no dispute between the parties that this practice was in effect at BCDC between February 27, 2015 and May 5, 2020.

Munday and Devine (together, "plaintiffs") were arrested in March 2018 and January 2019, respectively, for driving under the influence. The charges against both were later dismissed. After the respective arresting officers transported each plaintiff to BCDC to begin the booking process, both underwent a full body pat down followed by a strip search and visual body cavity search. On March 6, 2020, plaintiffs initiated this

---

[1] A pre-classification detainee is an inmate who has been arrested and placed or housed in an area at the detention center prior to going to his or her bond hearing. ECF No. 34-1 at 2.

action asserting various state and federal claims against BCDC, the County, Foot, Grant, defendants John Does 1–5, and defendants Jane Does 1–5 (together, "defendants") on behalf of themselves and others similarly situated.

Pursuant to 28 U.S.C. §§ 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C), all pretrial proceedings in this case were referred to Magistrate Judge Cherry. On December 1, 2022, plaintiffs filed their motion for class certification. ECF No. 31. In that motion, plaintiffs sought to certify a class solely for their claim under 42 U.S.C. § 1983, alleging a violation of the equal protection clause of the Fourteenth Amendment of the United States Constitution. On May 2, 2022, Magistrate Judge Cherry issued the R&R, recommending that the court grant the motion. ECF No. 49. On May 16, 2022, defendants objected to the R&R. ECF No. 55. Plaintiffs did not file objections or respond to defendants' objections, and the time to do so has now expired. As such, the matter is now ripe for the court's review.

## II.  STANDARD

This court is charged with conducting a de novo review of any portion of a magistrate judge's R&R to which specific, written objections are made. 28 U.S.C. § 636(b)(1). A party's failure to object is accepted as agreement with the conclusions of a magistrate judge. See Thomas v. Arn, 474 U.S. 140, 149–50 (1985). The recommendation of the Magistrate Judge carries no presumptive weight, and the responsibility to make a final determination rests with this court. Mathews v. Weber, 423 U.S. 261, 270–71 (1976). However, de novo review is unnecessary when a party makes general and conclusory objections without directing a court's attention to a specific error in a magistrate judge's proposed findings. Orpiano v. Johnson, 687 F.2d 44, 47 (4th Cir.

1982).  In the absence of a specific objection, the court reviews the R&R only for clear error.  Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (citation omitted).

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only."  Califano v. Yamasaki, 442 U.S. 682, 700–701 (1979).  Class certification is governed by Federal Rule of Civil Procedure 23, under which a proposed class must both satisfy the prerequisites for certification outlined in Rule 23(a) and constitute one of the permissible "types of class actions" under Rule 23(b).  Rule 23(a) provides that one or more members of a class may sue as representative parties on behalf of all only if:

> (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Further, Rule 23(b) requires that class certification be appropriate based on one or more of the following circumstances: (1) individual actions would risk inconsistent adjudications, or adjudications dispositive of non-parties; (2) class-wide injunctive or declaratory relief is sought and appropriate; or (3) legal or factual questions, common to the proposed class members, predominate over questions affecting individual members.  Gunnells v. Healthplan Servs., 348 F.3d 417, 423 (4th Cir. 2003).  In addition to these explicit requirements, "Rule 23 contains an implicit threshold requirement that the members of a proposed class be 'readily identifiable,'" which courts often refer as to the "ascertainability" requirement.  EQT Prod. Co. v. Adair, 764 F.3d 347, 358 (4th Cir. 2014).

The party seeking certification carries the burden of demonstrating that each of the requirements for class certification is satisfied. Gariety v. Grant Thornton, LLP, 368 F.3d 356, 362 (4th Cir. 2004). That burden requires the party seeking certification to "do more than plead compliance with" Rule 23, meaning that it must actually "present evidence that the putative class complies with Rule 23." Adair, 764 F.3d at 357. Though class certification should not be "conditioned on the merits of the case," Clark v. Experian Info. Sols., Inc., 2001 WL 1946329, at *1 (D.S.C. Mar. 19, 2001), "a district court may need to probe behind the pleadings before coming to rest on the certification question," Adair, 764 F.3d at 357 (quoting Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013)) (internal quotation marks omitted). Accordingly, "[a]lthough Rule 23 does not give district courts a 'license to engage in free-ranging merits inquiries at the certification stage,' a court should consider merits questions to the extent 'that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied.'" Id. (quoting Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455, 464 (2013)).

District courts are to "give Rule 23 a liberal rather than a restrictive construction, adopting a standard of flexibility in application which will in the particular case best serve the ends of justice for the affected parties and . . . promote judicial efficiency." Gunnells, 348 F.3d at 424. Ultimately, the court "has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." Lienhart v. Dryvit Sys., Inc., 255 F.3d 138, 146 (4th Cir. 2001) (quoting In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996)).

## III.   DISCUSSION

Plaintiffs seek certification of a class based on the alleged violation of the Fourteenth Amendment equal protection rights of women who the BCDC subjected to strip and visual body cavity searches.  Plaintiffs proposed the following class definition: "Female pre-classification detainees in the custody of BCDC who, upon their admission or return to BCDC from outside of BCDC, were strip/visual body cavity searched, while pre-classification males were not, from February 27, 2015, until the class period closes." ECF No. 31 at 12.

In the R&R, the Magistrate Judge recommended that the court certify the following revised class definition: "Female pre-classification detainees in the custody of BCDC who, upon their admission to BCDC, were strip/visual body cavity searched, while pre-classification males were not, from February 27, 2015, until May 5, 2020." ECF No. 49 at 4 (footnotes omitted).

Specifically, in relevant part, the Magistrate Judge deleted the phrase "or return to BCDC from outside of BCDC" from the definition.  The Magistrate Judge set forth the following reasoning for removing this language from the class definition:

> Plaintiffs' proposed class originally included the phrase "or return to BCDC from outside of BCDC" in addition to "upon their admission to BCDC." ECF No. 31 at 1.  Plaintiffs' counsel conceded at the hearing that phrase should be removed from the proposed class definition, as it would include individuals who had been denied bond and were returned to BCDC and, as such, would have been subject to a strip search, regardless of gender.

See id. at 4 n.9.

6

Defendants object to the R&R and the class definition therein in three respects. The court discusses each objection in turn below.[2]

### A.  South Carolina Law Regarding Class Actions Against Political Subdivisions

Defendants first generally object to the R&R's recommendation that the court certify the class action, arguing that S.C. Code § 12-60-80(C), which is contained in the chapter known as the South Carolina Revenue Procedures Act ("RPA"), precludes a class action against the BCDC and the County. Section 12-60-80(C) provides that "a claim or action for the refund of taxes may not be brought as a class action in . . . any court of law in this State, and the department,[3] political subdivisions, or their instrumentalities may not be named or made a defendant in any other class action brought in this State." S.C. Code § 12-60-80(C) (emphasis added). Defendants argue that the underlined "catch-all" language in the statute prohibits any class action against South Carolina political subdivisions and instrumentalities—including BCDC and the County. In support of this argument, defendants suggest that in Aiken v. South Carolina Department of Revenue, 839 S.E.2d 96 (S.C. 2020), the South Carolina Supreme Court held that the "catch-all" language of § 12-60-80(C) precludes all class actions against governmental entities, not merely those for the refund of "taxes." According to defendants, because this lawsuit has been filed against a political subdivision and its instrumentalities, § 12-60-80(C) prohibits class certification in this matter.

---

[2] The court reviews the portions of the R&R to which no objections were filed for clear error and, finding none, adopts those portions of the R&R.

[3] "Department" is defined as the South Carolina Department of Revenue. S.C. Code § 12-60-30(9).

Notably, defendants did not raise this argument in their response to the motion to certify class, and the court may overrule the objection on this basis alone.[4] Regardless, the objection lacks merit because even if the RPA purported to bar all class actions against state entities, that bar would not apply to the class action in this federal case.

A recent case in this district, In re Jones, 618 B.R. 757 (Bankr. D.S.C. 2020), is instructive on the matter. In that case, debtors commenced a putative class action asserting certain causes of action under federal bankruptcy law against a South Carolina health services district that operated a medical center. The defendant district argued that it was a political subdivision and that pursuant to S.C. Code § 12-60-80(C)—and Aiken's interpretation thereof—a political subdivision lacked the capacity to be named as a party in a class action lawsuit. The court rejected that argument, explaining that "the United States Supreme Court held in Shady Grove Orthopedic Associates, P.A. v. Allstate Insurance Co., 559 U.S. 393 (2010) that a state law class action bar cannot trump Rule 23's authorization of class actions in federal court proceedings." In re Jones, 618 B.R. at 763. Accordingly, "[w]hile the state of South Carolina can certainly place limitations on litigants' abilities to bring certain actions in state court, those limitations do not extend to causes of action brought under federal bankruptcy law, in the bankruptcy court." Id. at

---

[4] "A petitioner whose case is referred to the Magistrate Judge for initial handling (for findings, conclusions, and recommendation) cannot for the first time in his objections to the Magistrate Judge's findings, conclusions, and recommendation raise a ground not asserted in the petition as it existed when the matter was before the Magistrate Judge for consideration." Thornton v. Johnson, 2001 WL 331983, at *1 (N.D. Tex. Apr. 3, 2001); see also Clark v. Thompson, 2014 WL 1234347, at *2 (D.S.C. March 25, 2014) (noting that a party's new argument raised for the first time in his objections "must be overruled as untimely and thus improper"); Buford v. Ocwen Loan Servicing, LLC, 2018 WL 6617646, at *3 (E.D. Va. Dec. 18, 2018) ("Parties may not raise entirely new arguments for the first time in their objections to a magistrate judge's report.").

769.  Likewise, here, any South Carolina bar on class actions against the BCDC and the County does not extend to plaintiffs' class action brought under § 1983 for alleged violations of the Fourteenth Amendment equal protection clause.  As the court stated in In re Jones,

> Whatever the effect of the South Carolina Supreme Court's holding in Aiken may be on other cases, it does not have an effect on this case. As stated above, Shady Grove governs and requires the application of Rule 23.  Aiken, while it may prohibit state class actions and class actions based on state causes of action, is not instructive here.

Id. at 767.  Accordingly, the court finds that this class action brought in federal court and grounded in federal law is not barred by South Carolina law.

### B.  Specific Exclusion

Next, defendants propose clarifying the revised class definition in the R&R to specifically exclude from the class women who returned to BCDC from bond hearings. Defendants agree with the Magistrate Judge's exclusion of the phrase "or return to BCDC from outside of BCDC" from the class definition.  However, defendants contend that, in the context of this class, the court should have expressly excluded those women, by including the following sentence: "The class definition expressly excludes any and all women who returned to BCDC from a bond hearing or other mat[t]er outside of BCDC." ECF No. 55 at 6.

According to defendants, it is undisputed that men who return to BCDC following a bond hearing would be strip searched because they are heading to general population. Therefore, both men and women who do not post bond would be treated equally and strip searched.  As a result, defendants maintain that there can be no equal protection violation as to women who are so situated.  Therefore, defendants argue that it is inappropriate for

the class to potentially include such women. They ask that the court amend the class definition to expressly exclude women who return to BCDC from bond hearings.

The court resolves to include the clarification sentence in the class definition. Plaintiffs have previously agreed to the exclusion articulated in that sentence, so the court sees no harm in including the express statement to that effect. Again, the Magistrate Judge observed that "Plaintiffs' counsel conceded at the hearing that [the phrase "or return to BCDC from outside of BCDC"] should be removed from the proposed class definition, <u>as it would include individuals who had been denied bond and were returned to BCDC and, as such, would have been subject to a strip search, regardless of gender</u>." ECF No. 49 at 4 n.9 (emphasis added). The phrase defendants propose adding to the class definition is consistent with plaintiffs' concession, and therefore the court accepts the proposal.

### C.  Limited to Equal Protection Claim

Next, defendants object to the R&R to the extent it recommends class certification that is not limited to the equal protection claim. As set forth above, the R&R focuses only on class certification for plaintiffs' equal protection claim. Indeed, the Magistrate Judge noted that "Plaintiffs have limited their class certification petition to their equal protection claim under the Fourteenth Amendment and are not seeking certification of any of the other claims alleged in the Amended Complaint." Id. at 7. Defendants interpret the R&R as recommending only class certification on the issue of whether subjecting pre-classification women, but not pre-classification men, to strip searches was constitutional. Despite their understanding of the R&R, however, defendants "object to class certification [that] includ[es] any other issues, including damages to be awarded to

10

any class member if the different treatment of pre-classification women and men is found to be unconstitutional." ECF No. 55 at 7.

The court overrules the objection. As defendants properly note, the R&R recommended class certification for the § 1983 equal protection claim only. Therefore, the court's adoption of the R&R and grant of the motion to certify class is limited to the equal protection claim as well. Moreover, as it relates to defendants' contention that class certification should not include the issue of damages, it appears to the court that the R&R did not decide whether damages would be determined on an individualized or class basis. However, the Magistrate Judge was not required to make such a determination in deciding a motion to certify class. See Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 429 (4th Cir. 2003) ("[T]he need for individualized proof of damages alone will not defeat class certification."); Hill v. W. Elec. Co., Inc., 672 F.2d 381, 387 (4th Cir. 1982) ("Bifurcation of . . . class action proceedings for hearings on . . . damages is now commonplace."); Chisolm v. TranSouth Fin. Corp., 184 F.R.D. 556, 566 (E.D. Va. 1999) (collecting cases). Nevertheless, while it did not firmly decide the issue, the R&R expressed concerns regarding the impracticability of conducting individualized inquiries into damages. See ECF No. 49 at 21 ("For most strip search claimants, class status is likely not only the superior means, but arguably the only feasible one to establish liability and damages.") (emphasis added); see also Gwiazdowski v. Cnty. of Chester, 263 F.R.D. 178, 190 (E.D. Pa. 2009) ("[C]ourts have concluded in similar 'strip search policy' cases that recovery by each putative class member would likely be small, and that each member would have little incentive to pursue its claims individually[.]"). At this juncture, the

court need not resolve the matter, as certification of the class is appropriate regardless of how the court ultimately determines damages.[5]

## IV. CONCLUSION

For the reasons set forth above, the court **ADOPTS** the R&R as clarified in this Order and **GRANTS** the motion to certify class in accordance with this Order.

**AND IT IS SO ORDERED.**

                                      **DAVID C. NORTON**
                                      **UNITED STATES DISTRICT JUDGE**

**July 14, 2022**
**Charleston, South Carolina**

---

[5] In the event additional concerns arise during the course of this litigation related to the class definition or its scope, the court has broad discretion to modify the class definition at a later date. General Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 160 (1982) ("Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation.") (citing Fed. R. Civ. P. 23(c)(1)).