**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**BEAUFORT DIVISION**

| | | |
|---|---|---|
| CHERYL A. MUNDAY and MARGARET DEVINE, *on behalf of themselves and others similarly situated*, | ) ) ) ) | |
| Plaintiffs, | ) ) | No. 9:20-cv-02144-DCN |
| vs. | ) ) | **ORDER** |
| BEAUFORT COUNTY; PHILIP FOOT; QUANDARA GRANT; JOHN DOES 1–5; and JANE DOES 1–5, | ) ) ) ) | |
| Defendants. | ) ) | |

This matter is before the court on defendant Beaufort County's ("Beaufort County" or the "County") motion for reconsideration, ECF No. 87, regarding the court's order, ECF No. 82, adopting in part and rejecting in part Magistrate Judge Molly Cherry's report and recommendation ("R&R"), ECF No. 76, to grant in part and deny in part Beaufort County's motion for summary judgment, ECF No. 48. For the reasons set forth below, the court denies the motion.

## I.  BACKGROUND

Because the parties are well acquainted with this litigation, the court will only briefly summarize material facts for the purpose of aiding an understanding of the court's legal analysis.

This matter arises from certain procedures in place at the Beaufort County Detention Center[1] ("BCDC") that are used for female pre-classification detainees.[2]  Once a pre-trial detainee goes to a bond hearing and cannot post a bond, upon returning to BCDC, he or she is then classified to a different area at BCDC, such as in general population or, depending on the inmate's behavior, maximum or super maximum security.  ECF No. 34-3 at 21:3–18.  On February 27, 2015, BCDC adopted a policy (the "policy") that all inmates moved from pre-classification to other areas of BCDC, including general population, would be strip searched.[3]  See ECF No. 31-4 at 2.  BCDC's practice (the "practice") has been to house female pre-classification inmates in general population while placing male pre-classification inmates in a separate pre-classification cell outside of general population.  ECF No. 31-3 at 14, Black Dep. 24:2–20.  Because female pre-classification inmates are housed in general population from the outset, the practice resulted in BCDC conducting a strip search on every female pre-classification detainee awaiting a bond hearing.  ECF No. 40-1 ¶ 6.  BCDC, however, did not do so for similarly situated male pre-classification detainees prior to May 5, 2020, because they were housed in a separate pre-classification cell outside of general population.

The two named plaintiffs in this case, Cheryl Munday ("Munday") and Margaret Devine ("Devine") (together, "plaintiffs"), allege they were impacted by this practice.

---

[1] Defendant Beaufort County operates BCDC. ECF Nos. 12 ¶ 7, 13 ¶ 5.

[2] A pre-classification detainee is an inmate who has been arrested and placed or housed in an area at the detention center prior to going to a bond hearing.  ECF No. 34-1 at 20:7–14.

[3] This policy of strip searching all inmates moved from pre-classification to other areas of the facility, including general population, was established in a memorandum (the "Allen Memorandum") from Deputy Director C.E. Allen published on February 27, 2015.  See ECF No. 40-1 ¶ 6, Grant Aff.

Specifically, each of them describes being arrested for driving under the influence (each had that charge later dismissed), brought into BCDC for holding, and subjected to a public strip search and visual body cavity search—all while similarly situated men were not subjected to such a search.

Plaintiffs filed the instant case on March 6, 2020, in the Beaufort County Court of Common Pleas on behalf of themselves and a class of all similarly situated women who were subjected to the practice and the policy.[4]  ECF No. 1-1, Compl.  On June 5, 2020, Beaufort County removed the case to federal court.  ECF No. 1.  This case was referred to Magistrate Judge Molly Cherry for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Civil Rule 73.02(B)(2)(g) (D.S.C.).  On August 5, 2020, plaintiffs filed an amended complaint, now the operative complaint.  ECF No. 12, Amend. Compl.  The plaintiffs brought various state and federal claims against Beaufort County, Assistant County Administrator for the Public Safety Division Philip Foot ("Foot"), Director of the BCDC Colonel Quandara Grant ("Director Grant"), John Does 1–5 (described as "BCDC Supervisory Defendants"), and Jane Does 1-5 (described as "BCDC Officer Defendants") (collectively, "defendants").  Amend. Compl. ¶¶ 7–11.

On May 2, 2022, defendants filed a motion for summary judgment.  ECF No. 48.  On October 28, 2022, Magistrate Judge Cherry issued the R&R which recommended the

---

[4] Specifically, the class is defined as "all women who have been admitted to the Beaufort County Detention Center while waiting for bail to be set or for an initial court appearance, women who have been arrested on default warrants and held in the Beaufort County Detention Center, and women who have been held in protective custody in the Beaufort County Detention Center. . . . These women have all been unlawfully subjected to routine strip searches, including degrading visual body cavity searches of their anuses and vaginas."  Compl. ¶ 4.

motion for summary judgment be granted in part and denied in part and recommended that plaintiffs' request to amend their amended complaint to name new defendants be denied. ECF No. 76, R&R. On March 27, 2023, the court adopted in part and rejected in part the R&R which, in turn, granted in part and denied in part Beaufort County's motion for summary judgment. ECF No. 82. On April 24, 2023, Beaufort County filed a motion for reconsideration. ECF No. 87. Plaintiffs responded in opposition on May 5, 2023, ECF No. 89, to which Beaufort County replied on May 12, 2023, ECF No. 90. As such, the motion has been fully briefed and it is now ripe for review.

## II.  STANDARD

### A.  Motion to Alter or Amend

Federal Rule of Civil Procedure 59(e) allows a party to file a motion to alter or amend a judgment. The rule provides an "extraordinary remedy which should be used sparingly." Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998) (internal quotation marks and citation omitted). The Fourth Circuit recognizes "only three limited grounds for a district court's grant of a motion under Rule 59(e): (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available earlier; or (3) to correct a clear error of law or prevent manifest injustice." Wilder v. McCabe, 2012 WL 1565631, at *1 (D.S.C. May 2, 2012) (citing Hutchinson v. Staton, 994 F.2d 1076 (4th Cir. 1993)). To qualify for reconsideration under the third exception, an order cannot merely be "maybe or probably" wrong; it must be "dead wrong," so as to strike the court "with the force of a five-week-old, unrefrigerated dead fish." TFWS, Inc. v. Franchot, 572 F.3d 186, 194 (4th Cir. 2009) (quoting Bellsouth Telesensor v. Info. Sys. & Networks Corp., 1995 WL 520978, at *5 n.6 (4th Cir. 1995)

4

(unpublished)).  "A party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such motion should not be used to 'rehash' arguments previously presented or to submit evidence which should have been previously submitted." Consulting Eng'rs, Inc. v. Geometric Software Sols. & Structure Works LLC, 2007 WL 2021901, at *2 (D.S.C. July 6, 2007).  Ultimately, the decision whether to reconsider an order resulting in judgment pursuant to Rule 59(e) is within the discretion of the district court.  See Hughes v. Bedsole, 48 F.3d 1376, 1382 (4th Cir. 1995).

### III.  DISCUSSION

The court granted Beaufort County's motion for summary judgment on Counts 1, 3, 4, 5, 6, 7, 8, 9, and 2 (as asserted against individual defendants), but denied Beaufort County's motion for summary judgment on Counts 2 (violations of the Equal Protection Clause pursuant to 42 U.S.C. § 1983 brought against Beaufort County) and 10 (attorneys' fees under 42 U.S.C. § 1988(b)).  ECF No. 82 at 23.  Beaufort County now moves the court to alter or amend its order, ECF No. 82, to enter summary judgment in favor of Beaufort County as to plaintiffs' equal protection claims brought under § 1983 (i.e., Counts 2 and 10).  ECF No. 87 at 2.

Beaufort County argues that the court committed an error of law when it concluded that the searching of female pre-classification detainees was facially discriminatory, when the challenged classification was in fact "indisputably facially neutral."[5]  Id. at 3–4.  In support of this contention, it cites to the Allen Memorandum

---

[5] To provide context to this argument, the court notes that according to the Fourth Circuit, unequal treatment constituting an equal protection violation "occurs in one of two ways: (1) when the government explicitly classifies people based on [a suspect classification], or (2) when a law is facially neutral, but its administration or enforcement disproportionately affects one class of persons over another and a discriminatory intent or

which specified that "<u>all</u> inmates moved from pre-classification to other areas of the

Detention Center (which would include general population) be strip searched." <u>Id.</u> at 4

(emphasis in original). Beaufort County argues that "[t]he language of the Memorandum

is, indisputably, gender neutral," because it "never mentions or discusses sex in any

way." <u>Id.</u> at 5. Thus, it concludes that "[t]he challenged conduct—searching all pre-

classification female detainees—is an obvious application of the policies embodied in the

facially-neutral Memorandum." <u>Id.</u> Further, Beaufort County argues that [t]here is no

evidence that the County made a conscious decision to specifically search women

because of their gender." <u>Id.</u> at 5–6. Thus, it contends that "the Court made a legal error

in shifting its focus from the facially-neutral search rules to their allegedly gender-

discriminatory <u>impact</u>." <u>Id.</u> at 6 (emphasis in original). "[T]he <u>only</u> evidence is that pre-

classification female detainees were only search [sic] because of their location," and

"there is no evidence of any policy, practice, custom, or intention that anyone be searched

specifically <u>because of</u> her sex." <u>Id.</u> (emphasis in original). Beaufort County concludes

that "the Court's determination that there is a facially discriminatory classification

disregards the requirement of proof of intent." <u>Id.</u> at 7. The County concedes that its

practice had an unequal impact on women, but it argues that is not enough because the

plaintiffs must show disparate impact and discriminatory purpose or intent, which the

County argues that plaintiffs have not adequately shown. <u>Id.</u> at 8–9 (citing <u>Flores v. City</u>

---

animus is shown." <u>Monroe v. City of Charlottesville</u>, 579 F.3d 380, 388 (4th Cir. 2009).
Thus, Beaufort County argues that the court improperly applied the first prong when it
found an explicit classification on the basis of a protected class, when the appropriate
standard of review for the actions in question should have come from the second prong
where the policy was facially neutral but caused a disparate impact. <u>See</u> ECF No. 87 at
3–4.

of N.Y., 2021 WL 663977, at *6 (E.D.N.Y. Feb. 19, 2021)). As such, Beaufort County concludes that the court improperly found the policy and the practice facially discriminatory when the policy was facially neutral. Id. at 8–9.

In response, plaintiffs emphasize that the court's order denying summary judgment on the § 1983 claim was correct because Beaufort County's actual practice is facially discriminatory and requires no proof of intent. ECF No. 89 at 2. Plaintiffs contend that the County's argument "is like saying that racially segregated bathrooms treated everyone equally, because everyone was prohibited from using the bathroom of a different race," which is, in essence, asking the court "to ignore the distinction between policy versus practice." Id. at 2–3. Plaintiffs go on to claim that "[i]f the Court adopts [Beaufort County's] logic, state actors like BCDC will avoid constitutional liability by whitewashing their written policies even when their actions are facially discriminatory." Id. at 5 (emphasis in original).

In reply, Beaufort County argues, once more, that the policy at issue is facially sex-neutral and, consequently, under a disparate impact analysis plaintiffs "must create a genuine issue of material fact regarding discriminatory intent to survive summary judgment, which they have not done (and cannot do)." ECF No. 90 at 1. Beaufort County argues that its liability under Section 1983 "is limited to constitutional violations caused by official policy or custom." Id. at 4 (quoting Littleton v. Swonger, 502 F. App'x 271, 277 (4th Cir. 2012) (internal citations and quotation marks omitted)). This means that a "policy or custom may be written ordinances and regulations, affirmative decisions of individual policymaking officials, omissions by policymaking officials that manifest deliberate indifference to the rights of citizens, and practices so persistent and

widespread as to constitute a custom or usage with the force of law." Id. (citing Carter v. Morris, 164 F.3d 215, 218 (4th Cir. 1999)). Thus, Beaufort County claims that the Allen Memorandum contains the official policy or custom at issue being challenged because it established the facially neutral policy of searching all detainees moved from pre-classification to another part of the prison, and not the practice of only moving and searching female detainees. Id. Finally, Beaufort County argues that the relevant policymaker, Director Grant, is a woman and member of the protected class, which "undermines any claim of discriminatory intent." Id. at 8–9 (providing a string cite of cases where courts purportedly found no discriminatory intent because the decisionmaker was part of the impacted class).

To reiterate, for the court to alter or amend its order under the third exception of Fed. R. Civ. P. 59(e), an order cannot merely be "maybe or probably" wrong; it must be "dead wrong," so as to strike the court "with the force of a five-week-old, unrefrigerated dead fish." TFWS, 572 F.3d at 194. "A party's mere disagreement with the court's ruling does not warrant a Rule 59(e) motion, and such motion should not be used to 'rehash' arguments previously presented or to submit evidence which should have been previously submitted." Consulting Eng'rs, Inc., 2007 WL 2021901, at *2.

Beaufort County presented nearly identical arguments—that the policy was facially neutral and that plaintiffs failed to create a genuine dispute of material fact regarding discriminatory intent—in its objections to the R&R, ECF No. 79 at 9–11, and its motion for summary judgment, ECF No. 48-1 at 11–13, which the court thoroughly reviewed and found to be without merit. See ECF No. 82 at 8–11. The court reminds Beaufort County that a Rule 59(e) motion "may not be used to relitigate old matters, or to

8

raise arguments or present evidence that could have been raised prior to the entry of judgment." <u>Pac. Ins. Co.</u>, 148 F.3d at 403 (internal citation and quotation marks omitted). Beaufort County asserted neither of the first two grounds for reconsideration; the third ground is not available either: Beaufort County has not shown that the court made a clear error of law, nor has it argued that the court's decision must be reconsidered to prevent manifest injustice. <u>See</u> <u>Hutchinson</u>, 994 F.2d at 1081. The court reiterates its conclusion from its order:

> [T]he action challenged is BCDC's practice of placing male pre-classification detainees in housing separate from general population inmates—which meant they were not automatically subjected to strip searches—whereas female pre-classification detainees were placed in general population and were always subjected to strip searches. . . . Had plaintiffs been male, they would have been placed in separate pre-classification detainee housing and would have in all likelihood avoided the strip search. Consequently, BCDC's practice clearly falls under the category of facial sex discrimination.

ECF No. 82 at 11. Far from being clear error, the court's decision was factually supported and legally justified. <u>See</u> <u>id.</u> (quoting <u>Bauer v. Lynch</u>, 812 F.3d 340, 347–48 (4th Cir. 2016) ("[T]he Supreme Court outlined . . . a simple test for identifying facial sex discrimination: such discrimination appears where the evidence shows treatment of a person in a manner which <u>but for that person's sex would be different</u>") (internal quotation marks omitted and emphasis added). Beaufort County's "mere disagreement" with the court's consideration of the practice at issue, versus the policy, "does not support a Rule 59(e) motion." <u>See</u> <u>id.</u> at 1082.

## IV.  CONCLUSION

For the foregoing reasons the court **DENIES** the motion to reconsider.

**AND IT IS SO ORDERED.**

**DAVID C. NORTON
UNITED STATES DISTRICT JUDGE**

**August 1, 2023**

**Charleston, South Carolina**